UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| PAUL EUSNER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No.  5:21-cv-00074-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| WILLIAM ELLIS SULLIVAN, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |

*** *** *** ***

This matter is before the Court on a Motion to Transfer filed by Defendants Erin Sullivan

and William Ellis Sullivan.  [R. 4.]  For the reasons that follow, the Sullivan's motion will be

**DENIED**.

**I**

On June 4, 2013, Plaintiff Paul Eusner lent the Sullivans, his daughter and son-in-law,

$250,000 so they could purchase real property located in Thunderstruck, North Carolina.[1]  [R. 1-

1 at 3.]  The check, which was written by Mr. Eusner to the Sullivans, included "loan Buck

Creek" in the memo line.[2]  *Id.* at 9.  On June 11, the Sullivans entered into an agreement for the

purchase of the property in Thunderstruck, North Carolina, for $265,000, using Mr. Eusner's

loan to make the purchase.  *Id.* at 3.  Eusner Mountain Properties, LLC, which is controlled by

---

[1] The Court construes the "pleadings and affidavits in the light most favorable to the plaintiff."  *Twenty First Century Commc'ns, Inc. v. TechRadium, Inc.*, 2010 WL 3001721, at *3 (S.D. Ohio July 30, 2010) (quoting *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989)).

[2] The Sullivans argue that despite the memo line of the check, shortly after providing the check, Mr. Eusner told the Sullivans "that this was a gift to Erin to balance other gifts going to Erin's sister and brother."  [R. 1-1 at 34.]  The Sullivans also argue that the fact that Mr. Eusner "made no demand for repayment…during the intervening eight years" is evidence that the check was a gift.  *Id.* at 35.

Mr. Eusner, owns the property adjoining the property the Sullivans purchased in North Carolina. *Id.* In 2018, the parties combined their two properties "for fly fishing rentals." *Id.* at 4. In January 2020, Mr. Sullivan avers that the parties decided to sell their two properties together, and the Sullivans "promised to repay in full the loan made by the Plaintiff" as part of the property sale. *Id.* However, only the Sullivan's property sold, and the Sullivans did not repay Mr. Eusner. *Id.*

In May 2020, the Sullivans moved to Wyoming. The temporary or permanent nature of this move is hotly contested by the parties. In his original Verified Complaint in Fayette Circuit Court that was filed on February 19, 2021, Mr. Eusner states that "Defendants' residence, domicile and last known address was at 1012 Turkeyfoot Road, Lexington, Fayette County, Kentucky 40502." [R. 1-1 at 2.] However, in an affidavit in a separate legal matter made on January 20, 2021, Mr. Eusner stated that the Sullivans "decided to sell [their] house in Lexington, Kentucky, and live in Wyoming permanently." [R. 4-7 at 4.] The Sullivans stated that they permanently moved to Wyoming in early 2020. [R. 1-1 at 30.]

On February 16, 2021, Mr. Eusner, through counsel, sent a letter to the Sullivans stating that they had an obligation to pay back the $250,000 he had loaned them, with interest.[3] *Id.* at 25. On February 19, before the Sullivans replied to the letter, Mr. Eusner filed this action in Fayette Circuit Court. *Id.* at 2. The Sullivans filed a motion to dismiss, which was denied by the

---

[3] The Sullivans argue that Mr. Eusner started taking "escalating retaliatory actions" against them after they obtained a "Stalking Order of Protection" against Mr. Eusner's son, Matthew (and Defendant Erin Sullivan's brother), following Matthew's increasingly threatening and hostile behavior. [R. 4-2 at 3.] These actions included 1) attempting to fire Defendant Ellis from his job as President and CEO of Great Lakes Minerals, LLC, which Mr. Eusner co-manages; 2) requiring a $50,000 deposit for the Sullivans to remain at the house in Wyoming where they were staying, which was owned by a Family Trust of which Defendant Erin Sullivan was a trustee; and 3) initiating this litigation. *Id.* at 3, 5.

2

circuit court judge.[4]  [R. 8-4 at 1.]  On March 19, the Sullivans removed this action to this Court.  [R. 1.]  On April 2, the Sullivans filed a Motion to Transfer to the District of Wyoming, Mammoth Division.  [R. 4.]

The core issue in this intrafamilial dispute is whether the Sullivans are legally obligated to pay back a $250,000 check they received from Mr. Eusner in 2013, and the issue presently before the Court is whether this matter should be transferred to the District of Wyoming.[5]

## II

## A

A motion to transfer venue is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The purpose of § 1404(a) is "to prevent the waste of time, energy, and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations and quotation marks omitted).  For this reason, transfer must be to a "more convenient forum," and not merely one that is equally convenient.  *Id.* 645–46.  Also, "courts do not allow transfer of a case in a situation where it would shift the inconvenience from the defendant to the plaintiff."  *Conrad v.*

---

[4] It appears that the Sullivan's motion was denied by the circuit court judge on March 29, which is approximately ten days after the matter had been removed to federal court.  [R. 8-4 at 2.]  To the extent the motion to dismiss is still pending, it is denied as moot, given the removal of this matter to federal court.

[5] The Sullivans requested oral argument with regard to this motion pursuant to Local Rule 7.1.  [R. 4 at 1.]  L.R. 7.1(f) provides that parties may request oral argument or a hearing "in a motion, response, or reply."  L.R. 7.1(f).  However, the decision to grant or deny the party's request is discretionary.  Here, the Court finds that oral argument would not assist the Court in resolving this matter and denies the Sullivan's request.  *See Moturi v. Asher*, 2020 WL 2084915, at *1 n.2 (W.D. Wash. April 30, 2020) (denying petitioners request for oral argument because "[t]he parties have thoroughly briefed the issues and oral argument would not be of assistance to the Court"); *see also White v. Wirtz*, 402 F.2d 145, 148 (10th Cir. 1968) (affirming district court's denial of oral argument request because "[t]here is no rule requiring oral argument").

*Transit Auth. of N. Ky.*, 2019 WL 6829952, at *4 (E.D. Ky. Dec. 13, 2019) (citing *Cowden v. Parker & Assocs.* 2010 WL 715850, at *2 (E.D. Ky. Feb. 22, 2010)).

District courts have wide latitude in determining whether a matter should be transferred to another venue. *Reese v. CNH America, LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (finding that "district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate"). In the Sixth Circuit, courts analyzing motions to transfer venue generally consider nine factors:

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Antony v. Buena Vista Books, Inc.*, 2020 WL 5995590, at *2 (E.D. Ky. Oct. 1, 2020); *see also Bell v. Jefferson*, 2019 WL 4017241, at *8 (E.D. Ky. Aug. 26, 2019); *Perceptron, Inc. v. Silicon Video, Inc.*, 423 F. Supp. 2d 722, 729 (E.D. Mich. 2006).

Before addressing the nine steps above, however, under § 1404(a), the Court must determine whether the case could have been brought in the transferee venue, which is the District of Wyoming. *Antony*, 2020 WL 5995590, at *2 n.2 (citing *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960)). Venue is proper in any "judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Here, the Sullivans are residents of Wyoming because that is where they are domiciled. § 1391(c). The Sullivans live in Wyoming, "have Wyoming driver's licenses, are registered to vote in Wyoming, [and] their children attend school in Wyoming." [R. 4-2 at 1.] Furthermore, "the alleged repudiation" of the loan at issue in this case" occurred in Wyoming." *Id.* Therefore,

4

the District of Wyoming would have been an appropriate venue in which to file the original complaint in this case.

However, venue may be proper in more than one district. *Ruther v. O'Neal*, 2006 WL 2795508, at *2 (E.D. Ky. 2006) (citing *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263–64 (6th Cir. 1998)). Despite the Sullivan's arguments to the contrary [*see* R. 9 at 2], the record before the Court at this early stage in the litigation indicates that venue is also proper in the Eastern District of Kentucky because "a substantial part of the events or omissions giving rise to the claim occurred" in the Eastern District of Kentucky. § 1391(b)(2). In 2013, while the Sullivans were living in Lexington, they agreed to purchase property in North Carolina and Mr. Eusner, who still lives in the Eastern District of Kentucky, provided the Sullivans with the $250,000 check at issue in this case in the Eastern District of Kentucky.[6] [R. 1-1 at 3.]

The Sullivans argue that because there are more ties to Wyoming than Kentucky, venue should be transferred to Wyoming. [R. 9 at 3.] However, even if that is true,

> [t]he fact that substantial activities took place in district B does not disqualify district A as proper venue as long as 'substantial' activities took place in A, too. Indeed, district A should not be disqualified even if it is shown that the activities in district B were more substantial, or even the most substantial.

*Kettering Adventist Healthcare v. Jade Designs, LLC*, 2021 WL 4844082, at *7 (S.D. Ohio Oct. 18, 2021) (quoting *Bramlet*, 141 F.3d at 263). Accordingly, venue is proper within the Eastern District of Kentucky.

---

[6] Mr. Eusner also argues that the parties entered into an agreement in 2020 while the Sullivans were still living in Lexington "for Erin and Ellis to pay back the loan to [Mr. Eusner] upon the sale of the purchased…land, and an agreement executed in Lexington, Kentucky, when Erin and Ellis resided in Lexington, Kentucky, to list the North Carolina property for sale." [R. 8 at 9.] While the record would benefit from more development on this point, these are additional events connecting this case to the Eastern District of Kentucky.

**B**

**1**

The first factor the Court must consider in analyzing the Sullivan's motion to transfer is the convenience of witnesses.  The Sullivans argue that they are not aware of any "non-party witnesses who will be impacted by a transfer of venue to the District of Wyoming," and that continuing the litigation in Kentucky would inconvenience the Sullivans because Erin "presently has no ties to Kentucky" and Ellis only travels to Kentucky occasionally for work.  [R. 4-2 at 9, 11.]  However, Mr. Eusner argues that although the Sullivans may not have any witnesses, there are individuals living in Kentucky and North Carolina that he may call as material witnesses in this case.  [R. 8 at 9.]  Furthermore, Mr. Eusner argues that many of the underlying events in this case occurred in the Eastern District of Kentucky, and that Courts have consistently held that courts will not grant a motion to transfer venue if its practical effect is "merely to shift the inconvenience from one party to the other.  *Id.*

This factor weighs slightly in favor of Mr. Eusner.  Generally, "[t]he convenience of witnesses acts as one of the most important factors in deciding whether to transfer under § 1404(a)."  *Antony*, 2020 WL 5995590, at *3 (quoting *Conrad*, 2019 WL 6829952, at *3); *West Am. Ins. Co. v. M&M Serv. Station Equip. Specialists, Inc.*, 2017 WL 441542, at *2 (W.D. Ky. Feb. 1, 2017) (finding that it is the convenience of non-party witnesses that is particularly important under this factor).  Here, however, because the Sullivans do not have any non-party witnesses and Mr. Eusner's witnesses are speculative at this point, this factor does not weigh strongly in favor of either side.  While the Sullivans do not plan to call any witnesses in this case, any witnesses Mr. Eusner may call in this case would be from North Carolina or Kentucky and would be inconvenienced by having to travel to Wyoming to testify.  *Cf. McDorman v. D&G*

6

*Props.*, at *4 (W.D. Ky. Nov. 21, 2018) (finding that inconvenience for non-party witnesses is more important than for party-witnesses). Therefore, this factor slightly favors Mr. Eusner.

2

The next factor, location of relevant documents and relative ease of access to sources of proof, does not favor either party. Although the Sullivans are correct that this case likely will not be particularly "document-intensive" [*see* R. 4-2 at 9] essentially all documents and relevant information in this case are located in the Eastern District of Kentucky. For example, "the initial funding of the loan was from funds drawn off a bank account in Olive Hill, Kentucky," and those funds were deposited in a bank in Kentucky. [R. 8 at 10.] Furthermore, "listing and sales agreements were executed in Kentucky," and the proceeds from the sale of the Sullivan's property in North Carolina were paid to Defendant Ellis's limited liability company, which had its principal office in Lexington, Kentucky. *Id.*

However, given the type of documentation at issue in this case, there is no reason that the documents cannot "be filed and transferred electronically." *West Am. Ins. Co.*, 2017 WL 441542, at *3 (citing *Cowden*, 2010 WL 715850, at *4); *see also First Fin. Bank, Nat'l Ass'n. v. Williams*, 2019 WL 4675392, at *2 (W.D. Ky. Sept. 25, 2019) ("The location of documents is a relatively less important consideration in the transfer convenience analysis, given the comparatively low cost of transporting documents.") (quoting *Mcintosh v. E-backgroundchecks.com, Inc.*, 2013 WL 954281, at *4 (E.D. Ky. Mar. 11, 2013)). Therefore, this factor does not favor either party.

3

The third factor for consideration is convenience of the parties. The Sullivans argue that continuing the litigation in Kentucky would inconvenience them because Erin "presently has no

7

ties to Kentucky" and Ellis only travels to Kentucky occasionally for work.  [R. 4-2 at 9, 11.]
However, Mr. Eusner argues that courts have consistently held that courts will not grant a motion
to transfer venue if its practical effect is "merely to shift the inconvenience from one party to the
other."  [R. 8 at 9.]

      This factor weighs in favor of Mr. Eusner.  While it may be true that this forum may not
be as convenient for the Sullivans, "courts do not allow transfer of a case in a situation where it
would shift the inconvenience from the defendant to the plaintiff."  *Conrad*, 2019 WL 6829952,
at *4.  Furthermore, given the issue in this case, whether the Sullivans are legally obligated to
pay back $250,000, they likely will need to travel to the Eastern District of Kentucky very little,
if at all.  *See West Am. Ins. Co.*, 2017 WL 441542, at *3 ("[T]his action involves the
interpretation of an insurance contract—a question of law for the Court to resolve. It is unlikely
that the parties will need to travel to the Western District.").  Therefore, this factor favors Mr.
Eusner.

**4**

      The next factor is the locus of operative facts.  The Sullivans argue that this case has
"minimal ties to Lexington," particularly because they live in Wyoming now instead of
Kentucky.  [R. 4-2 at 10.]  Furthermore, the Sullivans argue that they lived in Wyoming when
they received the letter from Mr. Eusner demanding they repay the $250,000.  *Id.* at 11.  In
response, Mr. Eusner argues that almost all of the relevant facts happened in or are connected to
Kentucky.  Specifically, Mr. Eusner argues that (1) the loan itself was made in Kentucky; (2) the
funds were delivered and accepted in Kentucky; (3) the property was purchased under the name
of a Kentucky Limited Liability Company; (4) the agreement to repay the loan was made in

8

Kentucky; and (5) Defendant Ellis presumably received payment for the sale of his property to his Kentucky limited liability company.  [R. 8 at 10–11.]

On the flip side, it is true that the Sullivans lived in Wyoming when they received the demand letter from Mr. Eusner to repay the $250,000 and therefore argue that Wyoming would be the location of any alleged breach.  [R. 4-2 at 9.]  However, the loan was made in Kentucky, and, viewing the Complaint in the light most favorable to Mr. Eusner, so was an agreement to repay the loan.  "Where each location has a significant connection to the operative facts of [the] case, the factor does not carry much weight."  *Williams*, 2019 WL 4675392, at *3 (quoting *McDorman*, 2018 WL 6133167, at *6).  Because both locations have significant connection to the operative facts in this case, the Court finds that this factor does not favor either party.

**5**

The next factor, which is the availability of process to compel the attendance of unwilling witnesses, slightly favors Mr. Eusner.  As stated above, the Sullivans do not plan to call any witnesses, which means that there are no non-party witnesses in Wyoming.  Mr. Eusner, however, has indicated that he may choose to call witnesses from Kentucky or North Carolina. [R. 8 at 11.]  "[A] subpoena may compel a person to attend a trial, hearing, or deposition within 100 miles of where the person resides, is employed, or regularly transacts business in person." *Conrad*, 2019 WL 6829952, at *5 (quoting Fed. R. Civ. P. 45).

Keeping the trial in the Eastern District of Kentucky should permit Mr. Eusner to call any pertinent witnesses within Kentucky.  And maintaining the action in the Eastern District of Kentucky would make it much easier for any potential witnesses in North Carolina to attend. Even though Mr. Eusner has not indicated that there would be problems getting any potential

witnesses to testify, this factor still "weighs in favor of [the Plaintiff] even if only slightly."

*Williams*, 2019 WL 4675392, at *3.

**6**

The relative means of the parties factor is neutral.  The Sullivans argue that Mr. Eusner

"possess the financial means to litigate the present dispute in Wyoming," and is "in a

considerably better financial position to bear any burden of litigating in another judicial circuit."

[R. 4-2 at 12.]  While that may be true, the Sullivans fail to support their conclusory claims.

Furthermore, the fact that one party has less means to litigate than another party is not sufficient

on its own to require transfer.  *Williams*, 2019 WL 4675392, at *3.

Here, while it may be true that Mr. Eusner is in a better financial position than the

Sullivans, Defendant Ellis is the president of a company in Kentucky and the Sullivans have "not

presented any documentation of [their] financial resources that would suggest that [they] are

unable to litigate this action in Kentucky."  *Fruit of the Loom, Inc. v. Zumwalt*, 2015 WL

7313423, at *9 (W.D. Ky. Nov. 19, 2015) (citing *Rickett v. Smith*, 2014 WL 5520626, *6 (W.D.

Ky. Oct. 31, 2014)).  Accordingly, this factor is neutral and does not favor either party.

**7**

The next consideration is the forum's familiarity with the governing law.  Here, both

parties agree that Kentucky law governs this matter.  However, the Sullivans argue that the

claims at issue in this case, declaratory relief, breach of contract, and unjust enrichment, "are

hardly complicated and novel claims concerning any local or nuanced area of law that the

District of Wyoming would have trouble resolving."  [R. 4-2 at 10.]  In response, Mr. Eusner

argues that although he does not doubt the competence of a federal judge in Wyoming, there is

no reason for a judge in Wyoming to have to apply Kentucky law.  [R. 8 at 12.]

In Kentucky, "contract disputes are governed by the law of the state with the most significant relationship to the contract." *West. Am. Ins. Co.*, 2017 WL 441542, at *3 (citing *Breeding v. Mass. Indem. & Life Ins. Co.*, 633 S.W.2d 717, 719 (Ky. 1982)). Furthermore, "[t]here is a strong preference in Kentucky for applying Kentucky law." *Williams*, 2019 WL 4675392, at *4 (quoting *McDorman*, 2018 WL 6133167, at *6). Although the Court agrees with the Sullivans that a federal judge in the District of Wyoming could certainly resolve these claims, this factor weighs in favor of Mr. Eusner.

**8**

The next factor the Court must consider is the weight accorded to Mr. Eusner's choice of forum. Here, the forum Mr. Eusner originally chose was Fayette Circuit Court. However, now that this matter has been removed to federal court, Mr. Eusner is seeking to keep this case within the Eastern District of Kentucky. [R. 8 at 1.] "[M]ost courts, including those in this district, give the plaintiff's choice of forum great weight or require a strong showing by the defendant that the transferee forum is more convenient." *Antony*, 2020 WL 5995590, at *8; *see also Reese*, 574 F.3d at 320 ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed").

Two factors that may decrease the importance of a plaintiff's choice of forum are 1) when there is little connection between the action and the forum; and 2) when the plaintiff does not live in the chosen forum. *Antony*, 2020 WL 5995590, at *8. However, as discussed supra, there are strong connections between Kentucky and this action. Furthermore, Mr. Eusner lives in Olive Hill, Kentucky, which is within the Eastern District of Kentucky. [*See* R. 1-1 at 2.] Therefore, this factor weighs in favor of Mr. Eusner.

9

The final factor is trial efficiency and the interests of justice, which is based on the totality of the circumstances. The Sullivans cite to statistics demonstrating that trial efficiency between the Eastern District of Kentucky and the District of Wyoming are "roughly the same," and this consideration is therefore neutral. *See Pharmerica Corp. v. Crestwood Care Center, L.P.*, 2013 WL 5425247, at *4 (W.D. Ky. Sept. 26, 2013) ("the differences revealed by these statistics [between the two venues] are so insignificant that they do not warrant consideration in the transfer analysis").

As to the interests of justice, the Sullivans have argued that there is no meaningful connection to the Eastern District of Kentucky and this case. However, as discussed above, the district both has a connection and an interest in litigating this case in Kentucky. *Williams*, 2019 WL 4675392, at *4. Furthermore, "there is no indication that [Wyoming] is any better suited to adjudicate this dispute or to protect the interest of the named plaintiff[]." *Cowden*, 2010 WL 715850, at *4. Ultimately, this factor also favors Mr. Eusner.

III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that the Sullivan's Motion to Transfer Venue **[R. 4]** is **DENIED**.

This the 7th day of December, 2021.



Gregory F. Van Tatenhove
United States District Judge

12