UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| PAUL EUSNER, | ) | |
| Plaintiff, | ) ) ) | Case No. 5:21-cv-00074-GFVT-MAS |
| v. | ) ) | |
| WILLIAM ELLIS SULLIVAN, *et al.*, | ) ) | **MEMORANDUM OPINNION & ORDER** |
| Defendants. | ) ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the parties' cross motions for summary judgment and motions to exclude expert testimony. [R. 51; R. 55; R. 65; R. 66; R. 68; R. 69.] To help him buy a house, Paul Eusner loaned Ellis Sullivan—his son in law—$250,000. [R. 1-1 at 3.] Eight years later, the loan remains unrepaid. *Id.* at 5. Mr. Eusner brings this action against Ellis and Erin Sullivan to recover the balance. *Id.* The Sullivans contend that the loan was forgiven and Mr. Sullivan counterclaims. [R. 53.] All move for summary judgment and to exclude the other side's expert witness. For the following reasons, Mr. Eusner is entitled to judgment on his breach of contract claim against Mr. Sullivan, the claims against Ms. Sullivan remain, and Mr. Sullivan's counterclaims are dismissed. Both experts are excluded.

**I**

This case is about a $250,000 check that Mr. Eusner made, payable to his son-in-law Mr. Sullivan. [*See* 66-1 at 1.] Mr. Eusner executed the check so that Ellis and Erin Sullivan could purchase a house. [R. 1-1 at 3.] Erin Sullivan is Mr. Eusner's daughter and wife to Mr. Sullivan. [R. 66-1 at 1.] The house was adjacent to real estate on what is known as the 1318 plot, which

the Eusner family trust owned through a limited liability company. [R. 1-1 at 2; R. 66-1 at 1.] Mr. Eusner's children served as trustees and beneficiaries of the trust. [R. 55-1 at 10 n.3.]

Mr. Eusner and the Sullivans originally understood that the check was a loan with no date for repayment. *Id.*; [R. 66-1 at 2; R. 76 at 2.] But according to Mr. Sullivan, Mr. Eusner later told Mr. Sullivan that he wanted to give each of his children property of equivalent value upon his death. [R. 68-1 at 2.] To split the properties, Mr. Eusner planned to devise real estate to each child, including giving the 1318 property to Ms. Sullivan. *Id.* And because the real estate properties intended for the other children were worth more than the real estate for Ms. Sullivan, Mr. Eusner also promised to forgive the $250,000 loan. *Id.* Mr. Sullivan alleges that Mr. Eusner then asked that Mr. Sullivan manage the 1318 property, including its finances, renovations, and maintenance. [R. 68-1 at 2-3.]

At some point, the parties decided to sell the 1318 property and the property bought with the help of Mr. Eusner's check. [R. 1-1 at 4.] Ultimately, only the 1318 property sold. *Id.* Following the sale, Mr. Eusner requested that the Sullivans repay the loan. *Id.* The Sullivans did not. *Id.* Mr. Eusner brings this action to recover the balance of the loan, and Mr. Sullivan counterclaimed for his services to maintain the 1318 property. [R. 1; R. 53.] All parties now move for summary judgment and to exclude expert testimony.

## II

Summary judgment is appropriate when "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). A genuine issue as to a material fact exists, and

2

thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *See Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant satisfies its burden by showing "that there is an absence of evidence to support the non-moving party's case;" the movant need not support its motion with affidavits or other materials negating the opponent's claim. *Celotex Corp.*, 477 U.S. at 323, 325.

Once the movant satisfies this burden, the non-moving party must present specific facts to demonstrate that there is a genuine issue of a material fact. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324). But the party cannot rely solely on the pleadings to establish that a material fact is genuinely disputed. *See Shreve v. Franklin Cty.*, 743 F.3d 126, 132 (6th Cir. 2014). The party must "direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Poss v. Morris (In re Morris)*, 260 F.3d 654, 665 (6th Cir. 2001) (internal quotations omitted). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact." *Id*. (internal citations omitted). In other words, a "scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

The Court then must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). When reviewing cross-motions for summary judgment, "the court must evaluate each motion on its own merits and view all facts and

inferences in the light most favorable to the nonmoving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).  However, a court cannot satisfy the burden for a party.  It is indeed "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 406 (6th Cir. 1992).

**A**

Mr. Eusner alleges breach of contract, declaratory judgment, and unjust enrichment claims against the Sullivans.  [R. 1.]  He moves for summary judgment on all claims.  [R. 66.]  The Sullivans also move for summary judgment on Mr. Eusner's claims.  [R. 51; R. 68.]

**1**

Mr. Eusner claims that the Sullivans breached an agreement to repay the $250,000 that he loaned them.  [R. 1-1 at 5.]  To recover on a breach of contract claim, a plaintiff must show the existence of a contract, breach of that contract, and that the breach caused damages.  *See EQT Prod. Co. v. Big Sandy Co., L.P.*, 590 S.W.3d 275, 293 (Ky. Ct. App. 2019).  The parties here do not dispute that the check was originally a contract to loan money or that the Sullivans have refused to repay the $250,000.  [R. 66-1 at 2; R. 76 at 2.]  Rather, Ms. Sullivan argues that she was never a party to the loan.  [R. 51-1.]  Both Sullivans argue that they never breached the loan contract because Mr. Eusner later forgave the loan as a gift.  *See id.*

**a**

Ms. Sullivan argues that she is entitled to judgment as a matter of law because she was not a party to the $250,000 loan.  [R. 51-1 at 2.]  To form a contract, Kentucky law requires the manifestation of mutual assent to the exchange.  *See Cent. Bank v. Gill*, No. 2011-SC-000442-

4

DG, 2013 Ky. Unpub. LEXIS 57, at *12 (Sep. 26, 2013). Manifestation of mutual assent requires each party to make a promise. *See* Restatement (Second) of Contracts § 18 (1981). Evidence may include spoken word or other conduct. *See Israel's Adm'r v. Rice*, 295 Ky. 360, 363 (1943).

Ms. Sullivan contends that the check and Mr. Eusner's deposition testimony establishes that she and Mr. Eusner did not intend to enter into a contract for a loan. [R. 51-1 at 3-4.] First, the check was payable to Ellis Sullivan for "loan Buck Creek." *Id.* at 7. Erin Sullivan does not appear on the check. *See id.* In addition, Mr. Eusner testified that "the loan was made from me to Ellis Sullivan of $250,000" and summarized the check: "I know that I told Ellis Sullivan—I didn't have a conversation with Erin Sullivan—that I would loan him $250,000 with the understanding that he was going to buy the Buck Creek property." *Id.* at 10-11.

Where Mr. Eusner's testimony suggests that he and Ms. Sullivan failed to form a contract, Ms. Sullivan's testimony suggests that they did. When asked, "when you received the $250,000[,] it was intended to be a loan, correct?" she replies, "yes." [R. 58-1 at 22.] She stated that she remembered Mr. Eusner "saying, look, pay it back when you can." *Id.* at 23. Similarly, when asked whether she expected to have to repay the loan, she said, "Yeah. I mean . . . we thought we would have to pay it back." *Id.*

So, by pointing only to the check and Mr. Eusner's testimony, Ms. Sullivan shows an absence of evidence to support Mr. Eusner's claim that they formed a contract. *See Celotex Corp.*, 477 U.S. at 323, 325. This shifts the burden to Mr. Eusner to present specific facts to demonstrate that there is a genuine issue of a material fact. *See Hall Holding*, 285 F.3d at 424. To do so, Mr. Eusner directs the Court's attention to specific portions of the record showing that Ms. Sullivan manifested an intent to contract with Mr. Eusner. *See In re Morris*, 260 F.3d at

665. With competing testimony, the Court cannot find that the evidence is so one-sided that Ms. Sullivan must prevail as a matter of law. *See Booker*, 879 F.2d at 1310. Ms. Sullivan's motion for summary judgment is denied.

b

Mr. Sullivan argues that he did not breach the contract because Mr. Eusner forgave the loan as a gift. [R.68-1 at 13-14.] Mr. Eusner contends that any promise he made to forgive the loan is unenforceable because the promise was not made in writing. [R. 66-1 at 9.] Generally, Kentucky law does not require promises to be in writing. *See John King Co. v. L.&N. R.R. Co.*, 131 Ky. 46, 54 (1908). Some exceptions apply. The statute of frauds requires that contracts for the sale of real estate be in writing and signed. Ky. Rev. Stat. § 371.010. Although the statute refers to contracts and uses the term "sale," the statute applies to gifts as well as promises to devise and bequeath property. *See Cannon v. Carr*, 292 Ky. 793 (1943) (gift of a life estate); *Bitzer v. Moock's Ex'r & Tr.*, 271 S.W.2d 877, 879 (Ky. 1954) (contract to devise property). In effect, the statute of frauds applies whenever "there is a purpose to transfer title to land." *Adamson v. Adamson*, 635 S.W.3d 72, 78 (Ky. 2021); *see also Fischer v. Fischer*, 348 S.W.3d 582, 598 (Ky. 2011) ("The rule in Kentucky is that any agreement involving real property must be reduced to writing to be enforceable.").

The statute of frauds seeks to prevent the enforcement of unfounded or fraudulent claims by requiring written evidence. *See Appleby v. Buck*, 351 S.W.2d 494, 496 (Ky. 1961). To achieve this, the statute of frauds renders the promise "unenforceable by either party" regardless of which party filed suit when a qualifying promise is not in writing. *Smith v. Williams*, 396 S.W.3d 296, 299 (Ky. 2012). Moreover, promises to transfer property "are generally regarded as entire, and not severable." *Bitzer*, 271 S.W.2d at 879. Thus, an unwritten promise to transfer

both real estate and non-real estate property is unenforceable as a whole unless the promise intends to be severable or separates the consideration paid for the real estate from the consideration paid for the non-real estate property. *See Fischer*, 348 S.W.3d at 598 (holding that an unwritten agreement to devise an estate including real estate and personal property was unenforceable in its entirety).

Here, any promise Mr. Eusner made would be barred by the statute of frauds. The Sullivans suggest that Mr. Eusner intended to leave his children properties of roughly equal value upon his death. *Id.*; [R. 76-2 at 2.] Because Mr. Eusner expected to devise properties valued at $1,500,000 to each of Ms. Sullivan's siblings, the Sullivans assert that Mr. Eusner promised to devise a property valued at $750,000 and forgive the $250,000 loan. *Id.* The Sullivans do not argue that the promise to forgive the loan is severable from the promise to devise the real estate or that, through gifting both kinds of property, Mr. Eusner intended to provide value roughly equal to the siblings' real estate inheritances. [*See* R. 81 at 7 (recognizing that "Eusner argues . . . the gift included leaving the North Carolina" property but arguing that "Eusner had no actual authority over the property").] In fact, the Sullivans acknowledge that the alleged loan forgiveness was intended to be part of the same promise as the devise of real property. [R. 60 at 8 ("Eusner has reneged on his promise, now demanding repayment of the $250,000 and selling the 1318 Property to a third party."); R. 58-2 at 19-20 ("The terms were that the trust property was being left to us, and that the $250,000 was free and clear to us as a gift.").]

Consequently, Mr. Eusner's alleged promise falls within the scope of the statute of frauds because its purpose was to transfer land by promising to devise real property to each child upon Mr. Eusner's death. *See Adamson*, 635 S.W.3d at 78; [R. 58-2 at 19-20 (noting that the terms of

7

the promise were to transfer the 1319 property and forgive the loan).] And since Mr. Eusner's promise included a promise to forgive the loan so that the land would provide equal value to each child, the promise is unenforceable as a whole unless set forth in writing. *See id*; *Fischer*, 348 S.W.3d at 598. Mr. Eusner argues, and the Sullivans do not dispute, that no writing sets forth the promise. [R. 66-1 at 9; R. 76 at 20-21; R. 82 at 5-6.]

The Sullivans argue that the statute of frauds cannot apply for two reasons. First, they do not request title to real property. [R. 76 at 21-22.] Second, Mr. Eusner could not transfer the real property that he promised to give. *Id.* These objections follow a theme: enforcing the promise here will not effect a transfer of land. But this is not the correct inquiry. A court asks only whether "there is a purpose to transfer title to land." *Adamson*, 635 S.W.3d at 78. Mr. Eusner's alleged purpose was to transfer land to each child and equalize the value by forgiving the loan. [R. 58-2 at 19-20.] That Mr. Sullivan does not request title is not a defense because the statute of frauds applies regardless of the remedy that the parties seek and simply renders the promise as a whole unenforceable. *See Williams*, 396 S.W.3d at 299. In addition, the statute of frauds can apply even if the promisor does not have ownership of the property. *See Craig v. Prather*, 41 Ky. 9, 10 (1841) (holding that the statute of frauds rendered unenforceable an oral promise to convey title from a third person to the promisee); *see also* 9 Williston on Contracts § 25:3 (4th ed.) (noting that most courts hold that "an absolute promise to procure a conveyance [is] within the statute.").

Mr. Eusner must show a contract, a breach of the contract, and damages. *See EQT Prod. Co.*, 590 S.W.3d at 293. The parties do not dispute that the check was originally a contract for a loan and that failing to repay the loan caused damages. [R. 66-1 at 2; R. 76 at 2.] However, Ms. Sullivan argues that she was never a party to the contract, and Mr. Sullivan argues that he never

8

breached the contract because Mr. Eusner forgave the loan. [R. 51; 68.] Because both sides present evidence showing that Mr. Eusner and Ms. Sullivan intended to enter into a contract, her motion is denied. [R. 51-1 at 3-4; R. 58-1 at 22.] In addition, because any gift forgiving the loan is barred by the statute of frauds, Mr. Sullivan breached the contract by failing to repay the loan. *See Adamson*, 635 S.W.3d at 78. Therefore, Mr. Eusner is entitled to judgment on his breach of contract claim against Mr. Sullivan and Mr. Eusner's claims against Ms. Sullivan remain.

**2**

Mr. Eusner also brings a claim for declaratory judgment. [R. 1-1 at 4-5.] Mr. Sullivan moves for summary judgment on this claim. [R. 68.] Mr. Eusner and Ms. Sullivan's motions also request judgment in their favor on "all claims," yet neither provide argument on Mr. Eusner's declaratory judgment claim. [*See* R. 51 at 1; R. 66 at 1.] Because Mr. Eusner and Ms. Sullivan provide argument on the declaratory judgment claim only in their reply briefs, the arguments are waived. [R. 59 at 2-3; R. 82 at 8-9;] *see Jones v. Wilson Cnty.*, 723 Fed. App'x 289, 294 (6th Cir. 2018) (citing *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006) ("An argument first presented to the Court in a reply brief is waived.")).

Mr. Sullivan argues that he is entitled to judgment on Mr. Eusner's declaratory judgment claim because a party cannot use declaratory judgment to determine the obligations under a contract already breached. [R. 68-1 at 16-17.] As both parties note, "declaratory judgment actions are not a substitute for, and indeed serve a different purpose than, breach of contract actions." *Cullman Sec. Servs. v. United Propane Gas, Inc.*, No. 2014-CA-001738-MR, 2015 Ky. App. Unpub. LEXIS 744, at *13 (Ky. Ct. App. Oct. 30, 2015). The focus of a declaratory judgment is prospective. That is, "a declaratory judgment does not decide a present controversy—*such as whether a contract has already been breached*—but instead resolves

justiciable controversies over present rights, duties or liabilities between parties." *Id.* (emphasis added) (citations omitted) (noting that the parties' declaratory action was not prospective because "the contract between the two parties had already expired.").

Mr. Eusner alleges that the Sullivans breached their contractual obligation to repay the loan. [R. 1-1 at 5.] He does not allege any future harm. Therefore, Mr. Sullivan requests only retrospective relief for which a declaratory judgment claim is inapplicable. *See, e.g.*, *Watson v. Progressive Direct Ins. Co.*, Civil Action No. 5: 22-203-DCR, 2022 U.S. Dist. LEXIS 233630, at *39 (E.D. Ky. Dec. 30, 2022) (dismissing a claim for declaratory relief where the claim alleged that the defendant "breached the terms of her insurance contract" and the plaintiff "has not demonstrated that she is likely to suffer future harm from [the defendant's] actions."). Accordingly, Mr. Sullivan is entitled to judgment with respect to the inapplicability of the declaratory judgment claim. Moreover, Mr. Eusner also admits that granting judgment on his breach of contract claim, as this Court does, moots his request for declaratory judgment. [R. 82 at 8-9.]

### 3

Lastly, Mr. Eusner brings a claim for unjust enrichment. [R. 1-1 at 4-5.] Mr. Sullivan argues that he is entitled to judgment on Mr. Eusner's unjust enrichment claim because unjust enrichment is unavailable when the terms of a contract apply.[1] [R. 68-1 at 17-19.] Indeed, courts "routinely dismiss claims for unjust enrichment when they are grounded on a breach of contract claim." *Handmaker v. Certusbank, N.A.*, No. 3:15-CV-129-TBR, 2015 U.S. Dist. LEXIS 140363, at *9 (W.D. Ky. Oct. 15, 2015); *see Shane v. Bunzl Distrib. USA, Inc.*, 200 Fed. App'x 397, 404 (6th Cir. 2006) ("The doctrine of unjust enrichment has no application in a

---

[1] Mr. Eusner and Ms. Sullivan again provide argument on this claim only in their reply briefs. [*See* R. 51 at 1; R. 66 at 1.] Therefore, the arguments are waived. *See Jones*, 723 Fed. App'x at 294.

10

situation where there is an explicit contract which has been performed.") (quoting *Codell Constr. Co. v. Commonwealth*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977).

Here, because the terms of the loan agreement control, Mr. Eusner cannot bring an unjust enrichment claim on the same conduct. *See, e.g.*, *Handmaker v. Certusbank*, N.A., No. 3:15-CV-129-TBR, 2015 U.S. Dist. LEXIS 140363, at *10 (W.D. Ky. Oct. 15, 2015) (dismissing an unjust enrichment claim where a valid contract applies). Mr. Eusner argues that a party may plead unjust enrichment in the alternative, though the party may not recover for both unjust enrichment and breach of contract. [R. 74 at 10.] Even if so, this Court enters judgment on Mr. Eusner's contract claim against Mr. Sullivan. Thus, his unjust enrichment claim can no longer survive. In addition, Mr. Eusner also concedes that granting judgment on his breach of contract claim, as this Court does, moots his unjust enrichment claim. [R. 82 at 8-9.]

**B**

Mr. Sullivan brings two counterclaims: promissory estoppel and "unjust enrichment/quantum meruit."[2] Mr. Eusner moves for judgment on these claims because promissory estoppel is barred by the statute of frauds and he is an improper party for Mr. Sullivan's equitable claim. [R. 55-1 at 14-17.] Mr. Eusner is correct. Thus, he is entitled to dismissal of all counterclaims.

Mr. Sullivan claims that the Court should enforce Mr. Eusner's promise to forgive the loan under promissory estoppel. [R. 53 at 6.] To establish a claim for promissory estoppel, a party must demonstrate a promise that the promisor should reasonably expect to induce action,

---

[2] Mr. Sullivan also pleaded a breach of contract claim. [R. 53 at 3-4.] But in his response to Mr. Eusner's motion for partial summary judgment, Mr. Sullivan abandoned the claim. [R. 60 at 6-7 ("Ellis is withdrawing his claim for breach of contract.").] Mr. Sullivan appears to do so because he believes that he could not plead breach of contract with his other claims in the alternative. *Id.* Even if he could proceed in the alternative, however, Mr. Sullivan's breach of contract claim would be barred by the statute of frauds for the same reasons as set forth above.

11

which does induce action, and that injustice can be avoided only by enforcement of the promise. *Jackson v. JB Hunt Transp., Inc.*, 384 S.W.3d 184 (Ky. 2012). In the absence of actual fraud, the statute of frauds bars promissory estoppel claims falling within its scope. *YEC Props., LLC v. Adams*, No. 2017-CA-002046-MR, 2019 Ky. App. Unpub. LEXIS 576, at *12 (Ky. Ct. App. Aug. 9, 2019) ("Actual fraud must be proven to maintain a claim for promissory estoppel.").

As discussed above, any promise Mr. Eusner made to Mr. Sullivan to forgive the loan and devise real property falls within the statute of frauds. *See Fischer*, 348 S.W.3d at 598; [R. 60 at 8 ("Eusner has reneged on his promise, now demanding repayment of the $250,000 and selling the 1318 Property to a third party.")]. Mr. Sullivan does not allege actual fraud. Therefore, his promissory estoppel claim is barred by the statute of frauds.

Mr. Sullivan also brings an equitable claim for relief because he managed the finances, renovations, and maintenance for the 1318 property. [R. 53 at 7.] His claim lists unjust enrichment as well as quantum meruit as the basis. [R. 53 at 6.] But under either theory, Mr. Sullivan's claim fails because he did not confer a cognizable benefit to Mr. Eusner. Whether unjust enrichment or quantum meruit, Mr. Sullivan's claim requires proof that he conferred a benefit upon Mr. Eusner. *See Furlong Dev. Co., LLC v. Georgetown-Scott Cty. Planning & Zoning Comm'n*, 504 S.W.3d 34, 39 (Ky. 2016) (noting that unjust enrichment requires that the plaintiff conferred a benefit upon the defendant); *Quadrille Bus. Sys. v. Ky. Cattlemen's Ass'n*, 242 S.W.3d 359, 366 (Ky. Ct. App. 2007) (quantum meruit requires a showing that valuable services were rendered to the person whom recovery is sought).

Generally, a plaintiff must allege that he directly conferred the benefit on the defendant. *See SAAP Energy v. Bell*, No. 1:12-CV-00098, 2013 U.S. Dist. LEXIS 122496, at *8 (W.D. Ky. Aug. 28, 2013). Though the parties need not be in direct privity with one another, the plaintiff

12

must allege a property interest or pecuniary gain conferred on the defendant. *See, e.g.*, *Johns v. Cathey*, No. 1:21-CV-00136-GNS-HBB, 2023 U.S. Dist. LEXIS 21133, at *4-5 (W.D. Ky. Feb. 7, 2023) (holding that, "despite a lack of privity," the plaintiff may have conferred a benefit because he "increased the value of the property and directly enhanced the value of [defendant's] remainder interest"); *accord Tupper v. Roan*, 349 Or. 211, 223 (2010) (holding that the plaintiff "must show that property or a property interest that rightfully belongs to her was taken or obtained by someone else").

Mr. Sullivan alleges that he provided "valuable services" to "Mr. Eusner at the 1318 Property, including managing all finances, paying the utilities, taxes and insurance on the property, managing all property renovations, making multiple trips to the property, and providing over 1,000-man hours." [R. 60 at 10.] Mr. Sullivan alleges that the benefits "conferred upon Eusner as the grantor benefitted him to the extent that those valuable benefits conferred by Ellis appreciated[] the 1318 Property." [R. 60 at 14.] Simply put, Mr. Sullivan argues that he made Mr. Eusner's prior gift to the trust more valuable.

This is not a property interest or pecuniary gain to Mr. Eusner. Mr. Eusner has no property interest in the 1318 real estate. [R. 61 at 4.] Mr. Eusner deeded the property to the family trust before Mr. Sullivan's alleged services, and he is not a trustee or beneficiary of the trust. [R. 55-7 at 2, 5; R. 66-3 at 61.] Moreover, the trust is irrevocable. [R. 55-7 at 5.] Therefore, Mr. Sullivan fails to allege that he conferred a property interest or pecuniary gain upon Mr. Eusner sufficient to establish unjust enrichment or quantum meruit. *See Johns*, 2023 U.S. Dist. LEXIS 21133, at *4-5. Mr. Eusner is likely happy that the trust is more valuable. But his delight is insufficiently economic to confer a cognizable benefit under Kentucky law.

13

Mr. Sullivan also argues that he conferred a benefit on Mr. Eusner because Mr. Eusner "controlled the 1318 Property," acted as an agent for the trust, and requested Mr. Sullivan's services. But he cites, and the Court is aware of, no authority for the notion that providing a benefit to a party over which the defendant has influence provides a benefit to the defendant himself. Indeed, finding a benefit whenever the defendant "requested the efforts" of the plaintiff would virtually remove the benefit requirement from the analysis. [R. 60 at 13.] Accordingly, there is no genuine issue of material fact and Mr. Eusner is entitled to judgment on Mr. Sullivan's counterclaims.

## C

### 1

Mr. Eusner moves to exclude the testimony of Deanna Ramsey, Ms. Sullivan's proffered expert, because the testimony is irrelevant or not based on specialized knowledge. Expert testimony is admissible, at the discretion of the Court, if it satisfies three requirements. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008). First, the expert must be qualified. *Id.* at 529. Second, the testimony must be relevant and based on specialized knowledge. *Id.* Third, the testimony must be reliable. *Id.*; *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000).

Testimony is relevant if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (quotation omitted); *see also* Fed. R. Evid. 401 (providing that evidence is relevant if it tends to make a fact of consequence more or less probable than it would be without the evidence). The Supreme Court has referred to this prong as the fit requirement. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993). The Court ensures that expert testimony fits the issues to be resolved at trial. "A valid connection to the pertinent inquiry is a precondition to admissibility." *Fed.-Mogul Corp. v. Ins. Co. of Pa.*, No. 12-12005, 2016 U.S.

Dist. LEXIS 114573, at *8 (E.D. Mich. Aug. 26, 2016) (citing *id.* at 591-92). Moreover, testimony is based on specialized knowledge if the topic is not within the understanding of an average juror. *See United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016) ("A district court may commit manifest error by admitting expert testimony where the evidence impermissibly mirrors the testimony offered by fact witnesses, or the subject matter of the expert's testimony is not beyond the ken of the average juror.").

     Here, Ms. Sullivan seeks to establish that Mr. Eusner converted the $250,000 loan to a gift. [R. 75 at 1-2.] She alleges that Mr. Eusner intends to "tell the jury that had this been a gift, then he would have put that down on a gift tax return." *Id.* at 6. To rebut this, Ms. Sullivan expects to introduce testimony from Ms. Ramsey—a certified public accountant—to testify that Mr. Eusner would have had to file a gift return even if the $250,000 remained an interest-free loan and that he did not file gift returns for previous gifts. *Id.* at 6-7. Whether offered by Mr. Eusner or Ms. Ramsey, evidence that Mr. Eusner was required to record gifts on his tax forms but failed to do so does not make a fact of consequence more or less probable. *See United States SEC v. ITT Educ. Servs.*, 311 F. Supp. 3d 977, 990 (S.D. Ind. 2018) (excluding expert testimony that was "proffered solely to rebut irrelevant issues raised by" the other party).

     Mr. Eusner's tax forms have the potential to support either party's contention. If the loan remained an interest-free loan, as Mr. Eusner argues, then the Internal Revenue Code treats the market interest rate as a gift to the recipient. 26 U.S.C. § 7872(f)(3). If the loan converted to a gift, as Ms. Sullivan argues, then the IRC would treat the amount of the loan as a gift. Thus, evidence of a gift reported on Mr. Eusner's tax forms relating to the loan would be relevant. Mr. Eusner would support his position by showing a gift in the amount of market interest on the loan. Ms. Sullivan would support her position by showing a gift in the amount of the outstanding

balance of the loan. But Mr. Eusner's tax forms reflect neither: he did not report a gift relating to the loan at all. [R. 65-9 at 16-17.]

Ms. Ramsey provides a helpful summary of the implications, stating that "it's simply an indication that they did not file taxes properly." *Id.* at 23. She explains: If I have[] solely the tax returns to look at[,] I could not call this a loan, nor could I call this a gift, because the tax returns do not properly include the transferring of this money." *Id.* at 25. When asked: "is there nothing in the tax returns that indicates either way," Ms. Ramsey responded, "[t]hat's correct." *Id.* at 27-28. The Court agrees. Because the tax forms omit the pertinent information about gifts, evidence relating to Mr. Eusner's obligation, and failure, to report gifts do not make a fact at issue—whether the loan converted to a gift—any more or less probable. *See* Fed. R. Evid. 401; 702(a).

Ms. Sullivan contends that the testimony is relevant because she also expects Ms. Ramsey to explain that Mr. Eusner did not report prior loans and gifts in his tax forms. [R. 75 at 9.] Ms. Sullivan offers this evidence "to establish Eusner's pattern of making gifts and interest free loans to family members" without reporting them in his tax forms. *Id.* Ms. Sullivan points to several instances where Mr. Eusner gave a loan or gift and did not report them as required. *Id.* at 8-9. But she does not allege that Mr. Eusner's pattern of failing to report gifts or loans would provide any insight into whether he converted the loan at issue into a gift. Rather, she simply argues that Mr. Eusner often disregards reporting requirements. *Id.* As explained above, showing that Mr. Eusner fails to comply with the Internal Revenue Code, alone, does not make a fact at issue more or less probable.

In addition, Ms. Ramsey concludes in her disclosures that Mr. Eusner likely converted the loan to a gift. [R. 85-1 at 6.] She bases her opinion on an email from Mr. Eusner to Mr.

16

Sullivan that stated in part, "Payment of $250,000 on purchase is accrued to North Carolina BC properties so you have no outstanding debt obligation." *Id.* Mr. Eusner concedes that this testimony would be relevant but argues that the testimony is not based on specialized knowledge. [R. 65 at 10.] Ms. Ramsey appears to agree. She testified that the opinion involved "making no judgment," only "merely stating what he said." [R. 65-9 at 52.] And when asked: "You don't require any specialized training, skill, [or] experience as a CPA to understand the language; correct?" Ms. Ramsey responded: "That is correct." *Id.* Ms. Sullivan's response does not argue otherwise. [*See* R. 75.] Because Ms. Ramsey's interpretation does not require specialized knowledge, it must be excluded as expert testimony. *See* Fed. R. Evid. 702.

Accordingly, evidence relating to Mr. Eusner's requirement to record gifts on his tax forms but failing to do so is not relevant. Moreover, Ms. Ramsey's interpretation of Mr. Eusner's email does not require specialized knowledge. Thus, they are inadmissible. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529.

**2**

Mr. Eusner also seeks to introduce expert testimony from Stephen Horn to rebut Ms. Ramsey's testimony. [R. 64.] However, Mr. Eusner filed Mr. Horn's expert disclosures on December 29, 2022, which was nearly four months after Mr. Eusner's deadline to designate experts and over a month after the conclusion of discovery. *Id.*; [R. 15.] Ms. Sullivan moves to exclude Mr. Horn's testimony and strike his disclosures as untimely. [R. 69.]

The Federal Rules provide that a party must comply with a court's orders setting deadlines for expert disclosures. Fed. R. Civ. P. 26(a)(2)(D)(ii). If a court does not set a deadline, a party must disclose an expert "intended solely to contradict or rebut" the other party's expert testimony within 30 days after the other party's disclosure. *Id.* Although this Court

provided deadlines for expert disclosures, it did not set a deadline for rebuttal experts. Thus, Mr. Eusner had 30 days after Ms. Ramsey's disclosures to file his own disclosures. *See id.*; *Telepak Networks, Inc. v. City of Memphis*, No. 2:14-cv-02027-SHM-cgc, 2014 U.S. Dist. LEXIS 156990, at *6 (W.D. Tenn. Nov. 6, 2014) (holding that the court's scheduling order omitted a deadline for rebuttal experts although it included expert disclosure and fact discovery deadlines).

Ms. Sullivan provided the expert disclosures for Ms. Ramsey on October 10, 2022. [R. 85-1.] Mr. Eusner filed his rebuttal expert disclosure two and a half months later and nearly a week before the deadline for dispositive or *Daubert* motions. [R. 64 (filed on December 29, 2022); [R. 15 (setting the dispositive and *Daubert* motions deadline for January 6, 2023).] Mr. Eusner argues that the Court should not start the 30-day clock on October 10 because he did not receive notice that Ms. Ramsey intended to opine on "whether the $250,000 payment was converted from a loan into a gift until her November 10, 2022, deposition." [R. 78 at 5.] However, Ms. Ramsey's disclosures provide the text of Mr. Eusner's email and concludes that "[t]he above statement indicates the Sullivans had 'no outstanding debt obligation' on said money." [R. 85-1 at 6.] Mr. Eusner does not explain how this differs from Ms. Ramsey's opinion during her deposition, and the Court finds none. Therefore, Mr. Eusner's expert is excluded from testifying and Mr. Eusner's expert rebuttal disclosures are stricken from the record. *See, e.g.*, *Kelliher v. DXC Tech. Servs.*, LLC, No. 19-13316, 2021 U.S. Dist. LEXIS 228328, at *6 (E.D. Mich. Feb. 22, 2021) (striking expert disclosures as untimely); *Boone v. Stieve*, No. 1:12-cv-14098, 2022 U.S. Dist. LEXIS 210544, at *19 (E.D. Mich. Nov. 21, 2022) (excluding expert testimony and striking the disclosure report as untimely). And even if Mr. Horn's testimony is not excluded as untimely, it would be excluded as irrelevant as it is offered only to rebut the inadmissible testimony of Ms. Ramsey. *See United States SEC v. ITT Educ.*

18

*Servs.*, 311 F. Supp. 3d 977, 990 (S.D. Ind. 2018) (excluding expert testimony that was "proffered solely to rebut irrelevant issues raised by" the other party); [R. 78 at 1 (asserting that Ms. Ramsey's testimony "will be the sole subject of Horn's rebuttal testimony").]

### III

Since there is a genuine issue as to whether Ms. Sullivan was a party to the original loan, Mr. Eusner's claims against her remain. However, Mr. Eusner is entitled to judgment on his breach of contract claim against Mr. Sullivan because Mr. Sullivan refused to repay the loan and any evidence of gift forgiving the loan is barred by the statute of frauds. Mr. Eusner is also entitled to judgment on Mr. Sullivan's counterclaims against him because promissory estoppel is barred by the statute of frauds and Mr. Eusner did not receive a personal benefit from Mr. Sullivan's services sufficient for unjust enrichment or quantum meruit. Mr. Sullivan is entitled to judgment on Mr. Eusner's claims for declaratory relief and unjust enrichment because Mr. Eusner seeks only retrospective relief and unjust enrichment is incompatible with his contract claim. Lastly, both motions to exclude are warranted. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Erin Sullivan's Motion for Partial Summary Judgment **[R. 51]** is **DENIED**;

2. Plaintiff/Counter Defendant Paul Eusner's Motion for Partial Summary Judgment on Ellis Sullivan's counterclaims [**R. 55**] is **GRANTED**;

3. Plaintiff/Counter Defendant Paul Eusner's Motion for Summary Judgment [**R. 66**] is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Summary judgment is **GRANTED** as to **Count Two** against Defendant Ellis Sullivan and

    b. Summary judgment is **DENIED** as to Defendant Erin Sullivan and as to **Count One** and **Count Three** against Ellis Sullivan;

4. Defendant Ellis Sullivan's Motion for Summary Judgment **[R. 68]** is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. Summary judgment is **GRANTED** as to **Count One** and **Count Three** and

    b. Summary judgment is **DENIED** as to **Count Two**;

5. Mr. Eusner's Motion to Exclude [**R. 65**] is **GRANTED**;

6. The Defendants' Motion to Exclude [**R. 69**] is **GRANTED**;

7. Mr. Eusner's Second Motion in Limine [**R. 72**] is **DENIED AS MOOT**; and

8. Judgment in favor of Plaintiff Paul Eusner on Count Two against Defendant Ellis Sullivan, in favor of Mr. Eusner on all counts of Mr. Sullivan's counterclaim, and in favor of Mr. Sullivan on Count One and Count Three will be entered promptly.

This the 5th day of April, 2023.

Gregory F. Van Tatenhove
United States District Judge