UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| PAUL EUSNER, | ) |
| Plaintiff, | ) Case No. 5:21-cv-00074-GFVT-MAS |
| v. | ) **MEMORANDUM OPINION** |
| | ) **&** |
| WILLIAM ELLIS SULLIVAN, *et al.*, | ) **ORDER** |
| Defendants. | ) |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is before the Court on the Defendants' Motion for Reconsideration. [R. 105.] Plaintiff Paul Eusner and Defendants Erin Sullivan and Ellis Sullivan moved for summary judgment. [R. 51; R. 55; R. 66; R. 68.] In resolving the cross motions, the Court granted judgment on or dismissed the claims between Mr. Eusner and Ellis Sullivan and left Mr. Eusner's claims against Erin Sullivan remaining. [R. 102.] The Defendants now move for reconsideration. [R. 105.] For the following reasons, the Defendants' motion is **DENIED**.

**I**

Mr. Eusner issued a check payable to his son-in-law, Ellis Sullivan. [*See* 66-1 at 1.] Mr. Eusner executed the check so that Ellis and Erin Sullivan could purchase a house. [R. 1-1 at 3.] Mr. Eusner and the Sullivans originally understood that the check was a loan with no date for repayment. *Id.*; [R. 66-1 at 2; R. 76 at 2.] But according to Mr. Sullivan, Mr. Eusner later told Mr. Sullivan that he wanted to give each of his children inheritances with roughly equal value. [R. 68-1 at 2.] To accomplish this, Mr. Eusner promised to devise particular real estate properties to each child. *Id.* Because the real estate properties intended for the other children

were worth more than the real estate for Ms. Sullivan, Mr. Eusner also promised to forgive the $250,000 loan. *Id.*

Mr. Eusner brings this action to collect on the $250,000 loan. The Defendants argue that Mr. Eusner is not entitled to the loan proceeds because he forgave the loan. In resolving the parties' cross motions for summary judgment, the Court denied Erin Sullivan's motion, finding that a reasonable jury could find that she was a party to the $250,000 loan. [R. 102 at 4-6.] The Court also granted Mr. Eusner summary judgment on his breach of contract claim against Ellis Sullivan, finding that Mr. Sullivan breached the loan contract because Mr. Sullivan never repaid the loan, and the statute of frauds barred enforcement of any promise Mr. Eusner made to forgive Mr. Sullivan's obligation. *Id.* at 7-8. The Defendants now move for reconsideration of these determinations. [R. 105.]

**II**

The Defendants move for reconsideration "of the Court's interlocutory" order resolving the parties' motions for summary judgment under Federal Rule of Civil Procedure 54(b). [R. 108 at 1.] Rule 54(b) provides that interlocutory orders "may be revised at any time before the entry of a judgment." Reconsideration or modification of an interlocutory order is available "as justice requires." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. App'x 949, 959 (6th Cir.2004) (citation omitted).

Courts traditionally reconsider their determinations only where there is: "(1) an intervening change in controlling law; (2) new evidence available; [or] (3) a need to correct a clear error or prevent manifest injustice." *Louisville/Jefferson Cnty. Metro Gov. v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (quoting *Rodriguez*, 89 Fed. App'x at 959). However, a motion to reconsider under Rule 54(b) "may not serve as a vehicle to identify facts or raise legal

2

arguments which could have been, but were not, raised or adduced during the pendency of the motion of which reconsideration was sought." *Williams v. Ocwen Loan Servicing, LLC*, No. 2:18-cv-02802-SHL-cgc, 2019 U.S. Dist. LEXIS 226202, at *5 (W.D. Tenn. Dec. 30, 2019) (quoting *Madden v. City of Chattanooga*, No. 108-cv-160, 2010 U.S. Dist. LEXIS 14865, 2010 WL 670107, at *4 (E.D. Tenn. Feb. 19, 2010)).

Here, the Defendants request that the Court reconsider its determinations that a reasonable jury could find that Mr. Eusner and Ms. Sullivan entered into a contract and that the statute of frauds applies to a gift of loan forgiveness Mr. Eusner made to Mr. Sullivan. [R. 105 at 1-2.] While the Defendants also argue that the statute of frauds is satisfied even if applicable, this argument "could have been, but [was] not, raised or adduced during the pendency of the motion of which reconsideration was sought." *Williams*, 2019 U.S. Dist. LEXIS 226202, at *5. Accordingly, the Defendants properly move for the Court to reconsider only its determinations regarding the existence of a contract between Mr. Eusner and Ms. Sullivan and the applicability of the statute of frauds to Mr. Eusner's alleged gift.

### A

The Defendants argue that the Court should reconsider its determination that a genuine issue of material fact exists regarding whether Mr. Eusner and Ms. Sullivan assented to the original contract for a $250,000 loan. [R. 105 at 1.] The Defendants acknowledge that "some facts indicate[] a dispute as to whether Erin had assented to the loan contract." [R. 105-1 at 3.] However, they argue that "[i]t is not enough for Erin to assent to the loan" and that no facts suggest Mr. Eusner assented to the loan. *Id.* at 3-4. Indeed, as the Court observed in its previous order, Kentucky law requires the manifestation of mutual assent to an exchange to form a contract. *See Cent. Bank v. Gill*, No. 2011-SC-000442-DG, 2013 Ky. Unpub. LEXIS 57, at *12

(Sep. 26, 2013).  Manifestation of mutual assent requires each party to make a promise.  *See* Restatement (Second) of Contracts § 18 (1981).

To show that Mr. Eusner did not manifest an intent to loan money to Ms. Sullivan, she points to Mr. Eusner's deposition testimony that indicates that he is making the loan to Mr. Sullivan.  [R. 105-1 at 3-4.]  For example, when asked about the check, Mr. Eusner testified that the check "is a factual document that the loan was made from me to Ellis Sullivan of $250,000."  [R. 51-1 at 10-11.]  When asked whether he made the loan to Ms. Sullivan, even though her name did not appear on the check, Mr. Eusner testified, "I know that I told Ellis Sullivan—I didn't have a conversation with Erin Sullivan—that I would loan him $250,000."  *Id.*  Lastly, when asked: "So, the loan was not made to Erin Sullivan?" Mr. Eusner responded that "the loan and the check was made out to Ellis Sullivan."  *Id.*

On the other hand, Mr. Eusner cites facts from which a jury could reasonably infer that he also intended to make a loan to Ms. Sullivan.  First, Ms. Sullivan testified that she "remember[ed] [Mr. Eusner] saying, look, pay it back when you can, like don't worry; don't worry about it, just pay it back when you can."  [R. 58-1 at 23.]  Second, Ms. Sullivan's deposition testimony suggests that she believed Mr. Eusner intended to enter into a contract with her.  Ms. Sullivan admitted that "when [she] received the $250,000 that it was intended [by Mr. Eusner] to be a loan."  *Id.* at 22; *see also id.* at 23 ("[W]e thought we would have to pay it back.").  Third, Ms. Sullivan testified that Mr. Eusner intended her and her husband to use the loan to purchase a cabin.  *Id.* at 22-23 ("[H]e really wanted us to buy this cabin.").  When they bought the cabin, the cabin was jointly deeded to Ms. Sullivan and Mr. Sullivan.  [R. 107 at 2.]

It is possible, as the Defendants argue, that Ms. Sullivan's testimony and the cabin's deed do not reflect that Mr. Eusner intended the loan to include Ms. Sullivan as a party.  But the Court

4

must make all reasonable inferences in favor of Mr. Eusner. *See Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994). In a light most favorable to Mr. Eusner, the facts show that he manifested an intent to loan Ms. Sullivan $250,000. The Court may not resolve the tension between these facts and those cited by Ms. Sullivan; doing so would be impermissibly "weigh[ing] the evidence and determin[ing] the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Accordingly, the Court did not clearly err by determining that a genuine issue of material fact exists regarding whether Mr. Eusner and Ms. Sullivan entered into a contract. *See Louisville/Jefferson Cnty.*, 590 F.3d at 389.

**B**

The Defendants also ask the Court to reconsider its determination that the statute of frauds applies to the alleged promise Mr. Eusner made to forgive the $250,000 loan. [R. 105-1 at 4.] The Court concluded that the statute of frauds bars evidence of the promise to forgive the loan because Mr. Eusner made a single promise to give the Defendants an inheritance equal to Ms. Sullivan's other siblings by devising real property and forgiving the loan. [R. 104 at 7.] To reach its conclusion, the Court followed the general rule that promises including a purpose to transfer land are "regarded as entire, and not severable," and rendered unenforceable as a whole. *Bitzer v. Moock's Ex'r & Tr.*, 271 S.W.2d 877, 879 (Ky. 1954). The Defendants argued that the promise to forgive the statute of frauds does not bar the loan forgiveness because the forgiveness and real property were separate promises. [R. 76 at 20.] The Defendants now expound on three previous arguments and offer two new ones.

First, the Defendants argue that the statute of frauds does not bar the promise to forgive the loan and devise the 1318 property because Mr. Eusner "had no actual authority over that property" and they do not now seek title to the property. [R. 105-1 at 5.] This was the

5

Defendants' primary argument in their response to Mr. Eusner's motion for summary judgment. [R. 76 at 21-22.] However, only the promise's purpose matters. A court asks only whether "there is a purpose to transfer title to land." *Adamson v. Adamson*, 635 S.W.3d 72, 78 (Ky. 2021). The promisor's inability to complete the promised transfer in land does not affect the purpose of the promise. *See* 9 Williston on Contracts § 25:3 (4th ed.) (noting that most courts hold that "an absolute promise to procure a conveyance [is] within the statute"). The Court cited *Craig v. Prather* to exemplify that a promise to transfer real property falls within the statute of frauds even if the promisor cannot complete the transfer. 41 Ky. 9, 10 (1841). The Defendants agree that *Craig* supports "the proposition that you cannot enforce an oral contract against a third-party for the transfer of land." [R. 105-1 at 9.]

Rather, the Defendants contend that *Craig* is distinguishable because "[t]hat case was an action in an effort to enforce the transfer," and the Defendants do not seek enforcement of the promise to devise real property. *Id.* But the statute of frauds simply renders the entire promise unenforceable by action from any party to the contract. *See Smith v. Williams*, 396 S.W.3d 296, 299 (Ky. 2012) (citing *Dean v. Cassiday*, 88 Ky. 572 (1889)). Thus, a party can render the promise unenforceable regardless of whether they seek to enforce the transfer of the land. *See id.* ("[O]nce the statute of frauds is raised, the oral contract becomes unenforceable, regardless of which party filed suit."). Indeed, adopting the Defendants' argument would thwart Kentucky's decision to treat promises as inseverable. *Bitzer*, 271 S.W.2d at 879. By enforcing the loan forgiveness, the Court would be treating the loan forgiveness as severable from the promise to devise the 1318 property. The Defendants cite no authority suggesting otherwise.

Second, the Defendants argue that "the loan was converted into a separate intervivos gift" as "a matter of law pursuant to *Buchignani v. White*." [R. 105-1 at 6.] In *Buchignani*, a family

6

member gave another family member a check and later sued for repayment under unjust enrichment. *Buchignani v. Estate of Cranfill*, No. 2019-CA-001248-MR, 2020 Ky. App. Unpub. LEXIS 396, at *2 (Ky. Ct. App. June 5, 2020). The court affirmed the lower court's dismissal of the unjust enrichment claim because a letter sent by the promisor family member, along with the transfer of the funds, established that the transfer of funds was a gift. *Id.* at *9-11. But the *Buchignani* court never analyzed whether the statute of frauds applied to the transfer. *See also Cougler v. Fackler*, 510 S.W.2d 16, 18 (Ky. 1974) (holding that the statute of frauds does not apply to unjust enrichment claims). The *Buchignani* court did not hold, as the Defendants appear to argue, that a transfer satisfying the elements of a gift need not comply with the statute of frauds. In contrast, this Court found that the statute of frauds applies to Mr. Eusner's alleged promise for his breach of contract claim. [R. 102 at 7-8.] Accordingly, the Court never considered whether Mr. Eusner's promise would satisfy the elements for a gift—the issue for which *Buchignani* would be relevant.

Third, the Defendants argue that the statute of frauds does not apply because Mr. Eusner made the loan to enable the Defendants to purchase the 1360 property, not the 1318 trust property. [R. 105-1 at 5.] The Court agrees, but the Defendants' focus on the original loan is misplaced. The Court ruled that the statute of frauds applies to the promise to forgive the loan, not to the loan itself.

The Defendants now propose facts showing that the promises were separate or that the promises contained separate consideration for the real property and the loan. [R. 105-1 at 7.] The Defendants contend that an email from Mr. Eusner to Ellis, saying that "you have no outstanding debt obligation," demonstrates that the real estate and loan forgiveness were separate promises. [R. 105-1 ay 7.] The Defendants contend that the email shows separate promises

because it indicates that Mr. Eusner already forgave the loan; whereas, the devise of property was still in the future. *Id.* But these are merely dates of performance, not when Mr. Eusner made the promises. In fact, the Defendants maintained that Mr. Eusner made his promise to forgive the loan and to devise the real property during the same meeting in July 2015. [*See* R. 68-1 at 2.]

The Defendants also now argue that Mr. Eusner's promise is severable because "the promise separates the consideration which was $750,000 for the real estate and $250,000 for the loan." [R. 105-1 at 7.] However, the Defendants focus on the wrong side of the promise. A promise is severable if "the consideration for the devise of real property is separate and severable from the consideration for the bequest of personalty." *Bitzer*, 271 S.W.2d at 879. Consideration is "that which motivates a person to do something." *Consideration*, Black's Law Dictionary (11th ed. 2019). So, Mr. Eusner's promise would be severable if his motivation for forgiving the loan was different from his motivation for devising the real property. *See Bitzer*, 271 S.W.2d at 879. Yet Mr. Eusner's single motivation was to give his children inheritances of roughly equal value. [*See* R. 68-1 at 2.]

### III

The Defendants move for the Court to reconsider three determinations: (1) a genuine issue of facts exists regarding whether Mr. Eusner intended to contract with Ms. Sullivan, (2) that the statute of frauds prohibits evidence of any gift as a defense to Mr. Eusner's breach of contract claim, and (3) the statute of frauds is not satisfied. [R. 105.] However, the Defendants have not shown that the Court clearly erred by making the first two determinations. And the Defendants cannot raise their third argument now, which could have been, but was not, raised

8

previously. *See Williams*, 2019 U.S. Dist. LEXIS 226202, at *5. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendants' Motion for Reconsideration [**R. 105**] is **DENIED**;

2. A telephonic status conference to discuss scheduling in this matter is **SCHEDULED** for **Monday, May 22, 2023, at 12:30 p.m.** with Judge Van Tatenhove sitting in Frankfort, Kentucky; and

3. To join the teleconference, the parties are **DIRECTED** to call CMS Teleconferencing at 1-571-353-2301 and enter Meeting ID 085662784 (followed by #). Parties may also join the conference from a computer, mobile phone, or tablet by copying the following link into a web browser:

   https://meet.uc.uscourts.gov/meeting/085662784?secret=9hq7FrC0LpGQQhC3LT..cA

This the 8th day of May, 2023.

Gregory F. Van Tatenhove
United States District Judge